491 F.2d 59
 9 Fair Empl.Prac.Cas. 1299, 7 Empl. Prac.
Dec. P 9078,
160 U.S.App.D.C. 266
 J. J. O'DONNELL, as President of Air Line Pilots
Association, et al., Appellants,
v.
John H. SHAFFER, Individually and as Administrator of the
Federal Aviation Administration.
Truman R. OUTLAND et al., Petitioners,
v.
John A. VOLPE et al., Respondent.
 Nos. 71-1892, 72-1511.
 United States Court of Appeals, District of Columbia Circuit.
 Argued Nov. 29, 1973.
Decided Jan. 17, 1974.
 
 Gary Green Washington, D.C., for appellants in No. 71-1892. Allen Berk, Washington, D.C., also entered an appearance for appellants in No. 71-1892.
 James M. Merberg, Boston, Mass., of the bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of Court, for petitioners in No. 72-1511. William G. Ohlhausen, washington, D.C., was on the brief for petitioners in No. 72-1511.
 Edwin E. Huddleson, III, Atty., Dept. of Justice with whom Harold H. Titus, Jr., U.S. Atty., and Robert E. Kopp, Atty., Dept. of Justice were on the brief for appellees in No. 71-1892 and respondents in no. 72-1511. Morton Hollander and Irwin A. Seibel, Attys., Dept. of Justice, also entered appearances for appellees in No. 71-1892 and respondent in No. 72-1511.
 Michael H. Bader and John V. Kenny, Washington, D.C., filed a brief on behalf of Sidney A. Hill and others, as amicus curiae.
 Before BAZELON, Chief Judge, WILKEY, Circuit Judge, and VAN PELT,* United States Senior District Judge for the District of Nebraska.
 BAZELON, Chief Judge:
 
 
 1
 In March, 1972, the Federal Aviation Administration upheld its requirement that commercial air line pilots retire at age sixty. Appellants[1] challenge this decision on procedural and substantive grounds. Because the procedure utilized was appropriate and the factual basis adequate, we affirm the F.A.A.'s action.
 
 
 2
 * The 'age sixty' rule was promulgated in 1959 pursuant to the F.A.A.'s statutory authority to promote safety in air commerce.[2] Notice of proposed rulemaking was given and written comments were received, but no evidentiary hearing was held. The rule provided, as it does today, that no one who has reached age sixty may serve as a pilot on a commercial airplane.[3] When it was issued, the Administrator cited studies indicating that 'sudden incapacity due to . . . medical defects becomes significantly more frequent in any group reaching age 60' and the possibility of such incapacity 'cannot be predicted accurately as to any specific individual on the basis of presently available tests and criteria.'[4] In 1960 the Second Circuit held that the rule was a valid exercise of the Administrator's authority and that affected parties had no Constitutional or statutory right to an evidentiary hearing before it was issued.[5]
 
 
 3
 The present litigation began on June 5, 1970, when the Air Line Pilots Association (ALPA) filed a petition with the F.A.A. requesting revocation of the age sixty rule and initiation of 'public evidentiary proceedings for the development of a record' upon which their petition could be adjudicated.[6] ALPA's submission outlined evidence which allegedly established that the factual basis of the rule was invalid. On March 9, 1971, Captains Outland, Rogers, and Latimer filed a similar petition.[7]
 
 
 4
 The F.A.A. agreed to hold public hearings to receive the views of interested persons concerning retention, amendment, or revocation of the rule. The hearings were held on October 19 and 20, 1971, in accordance with the informal rulemaking procedures of the F.A.A. They were not, therefore, 'evidentiary hearings'-- formal cross-examination was not permitted. Instead they proceeded as follows. Interested parties presented oral or written statements. Following an oral statement those present were allowed to submit written questions of the witness for the purpose of clarification. At times, oral questioning of witness was permitted because the writing procedure proved unwieldy.[8] After the opening round of oral statements, witnesses were permitted to make additional comments or rebuttal, and several did so. The participants at the hearings included ALPA and Captains Outland, et al.
 
 
 5
 On March 23, 1972, the Acting Administrator of the F.A.A. issued a 'Disposition of Petition,' denying all petitions to revoke the age sixty rule. He summarized the evidence for and against the rule and noted that the Office of the Federal Air Surgeon had concluded that petitioners had justified neither revocation nor amendment. The Acting Administrator concurred in the Air Surgeon's judgment:
 
 
 6
 The testimony and exhibits offered at the hearing are at best subject to contention, as witnessed by the unqualified support of the age 60 rule by the Aerospace Medical Association, and the Committee on Aerospace Medicine, American Medical Association. . ..
 
 
 7
 Before the chronological basis for termination of service can be replaced by a system based on physiological and psychological factors, those factors must be capable of identification and application within the framework of the FAA medical examination . . .. In this regard, an increase in the number of medical examinations administered to a given pilot, as suggested by some of the testimony presented at the hearing, would not be an effective deterrent to incapacitation inasmuch as the indices of such incapacitation are not now sufficiently developed.[9]
 
 II
 
 8
 Appellants concede that neither the Administrative Procedure Act nor the Federal Aviation Act required the F.A.A. to conduct an evidentiary hearing in its October rulemaking proceeding. They contend, however, that the Due Process Clause mandated such a hearing because of the nature of the issues involved. The age sixty rule is based on the theory that risks of pilot incapacitation increase after age sixty and that medical science is unable to identify those risks on an individual pilot basis. Appellants maintain that scientific evidence developed in recent years invalidates this theory. Thus complex technical issues are involved in a matter affecting the livelihood of pilots. Consequently, appellants maintain, due process requires that 'trial by ordeal of cross-examination distill the truth.'[10]
 
 
 9
 We are unable to support this view. The age sixty rule does not 'single out any particular (party) for special consideration based on its own peculiar circumstances.'[11] Thus its adoption did not require an adjudicatory proceeding including formal cross-examination. The rule is rather a general standard 'applicable across the board' and thus a proper subject for less formal procedures.[12] The fact that pilots' livelihoods are affected does not distinguish this case from numerous others where agency rulemaking affects careers.[13] Rules that apply generally are not subject to the requirements of adjudication simply because of their inevitable effect on individuals.
 
 
 10
 Nor does the presence of technical issues in and of itself create a need for cross-examination. Much agency action involves technical expertise-- indeed, that is a major reason for the delegation of rulemaking authority to agencies.[14] Here the agency's proceedings provided an adequate opportunity for the airing of technical disputes. Appellants presented their evidence orally and in writing and questioned a supporter of the rule who testified at the hearing.[15] The agency considered the evidence presented at the hearing in its 'Disposition of Petition.' On these facts, the procedures were adequate for the task at hand.
 
 
 11
 The fact that an agency action falls into the traditional category of 'rulemaking' does not, of course, mean that traditional procedures are automatically adequate. This Court has long recognized that basic considerations of fairness may dictate procedural requirements not specified by Congress.[16] Oral submissions may be required even in legislative-type proceedings,[17] and cross-examination may be necessary if critical issues cannot be otherwise resolved.[18] Broad issues of public health and safety may, for example, require an expanded right of confrontation, /19/ subject, of course, to legitimate needs for emergency action.[20] The choice is not between a full trial-type hearing and no public proceeding at all.[21] The goal is rather to insure that administrators provide a 'framework for principled decision-making'[22] -- a framework that is appropriate for the issue at hand. As we have noted, such a framework was provided in this case.
 
 III
 
 12
 Appellants' final contention is that there was insufficient evidence to support the agency's decision to retain the age sixty rule. Given the inconclusiveness of appellants' evidence[23] and the
 
 
 13
 For these reasons, the judgment in to find that the F.A.A.'s decision was unreasonable.[25]
 
 
 14
 For thesr reasons, the judgment in Case No. 71-1892 is affirmed and the petition for review in Case No. 72-1511 is denied.
 
 
 15
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. 294(d)
 
 
 [1]
 'Appellants' is used throughout this opinion to refer collectively to appellants in No. 71-1892 and petitioners in No. 72-1511
 
 
 [2]
 See Air Line Pilots Association, International v. Quesada, 276 F.2d 892 (2d Cir. 1960), cert. denied, 366 U.S. 962, 81 S.Ct. 1923, 6 L.Ed.2d 1254 (1961)
 
 
 [3]
 Id. Today the relevant provisions of the Federal Air Regulations (14 C.F.R. Part 121) are as follows:
 Sec. 121.383(c). No certificate holder may use the services of any person as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday. No person may serve as a pilot on an airplane engaged in operations under this part if that person has reached his 60th birthday.
 
 
 [4]
 24 Fed.Reg. 9767 (December 5, 1959)
 
 
 [5]
 Air Line Pilots Association, International, supra
 
 
 [6]
 Verified Petition, June 4, 1970 (Joint Appendix, 6, 18)
 On November 9, 1970, ALPA filed suit in the United States District Court for the District of Columbia seeking an injunction compelling the F.A.A. to hold 'a public evidentiary, trial-type hearing' on the age 60 rule (J.A. 44). The District Court granted summary judgment for the F.A.A. (Civil Action No. 3316-70, September 1, 1971) and it is from this ruling that appellants in No. 71-1892 appeal.
 
 
 [7]
 Petitioners in No. 72-1511 are seeking direct review by this Court of the F.A.A.'s 'Disposition of Petition' of March 23, 1972
 This Court ordered the appeal in No. 71-1892 consolidated with No. 72-1511 for all purposes on December 14, 1972.
 Because of our clear jurisdiction in No. 71-1892 and our holding on the merits, we do not reach the question of whether we have jurisdiction in No. 72-1511 under 49 U.S.C. 1486(a). Cf. Deutsche Lufthansa Aktiengesellschaft v. C.A.B., 156 U.S.App.D.C. 191, 479 F.2d 912 (1973). We note only that, even if we have such jurisdiction, the proper standard for review of the rule in the instant case is nonetheless that stated in Part III, infra.
 
 
 [8]
 See, e.g., Tr. 51
 
 
 [9]
 Disposition of Petition, March 23, 1972 (J.A. 22, 26)
 
 
 [10]
 Appellant's (Case No. 71-1892) brief at 14, citing Richardson v. Perales, 402 U.S. 389, 414, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)
 
 
 [11]
 United States v. Florida East Coast Railway, 410 U.S. 224, 246, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973)
 
 
 [12]
 Id
 
 
 [13]
 See 1 Davis, Administrative Law Treatise 7.06, 7.07 (1958, 1970)
 
 
 [14]
 Id. at 1.05
 
 
 [15]
 Tr. 57-18
 
 
 [16]
 See, e.g., American Airlines v. C.A.B., 123 U.S.App.D.C. 310, 359 F.2d 624, 631-632 (en banc 1966), cert. denied, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966); Walter Holm and Co. v. Hardin, 145 U.S.App.D.C. 347, 449 F.2d 1009 (1971)
 
 
 [17]
 Id
 
 
 [18]
 See Thompson v. Washington (D.C.Cir. No. 71-2049, Dec. 10, 1973) at 28, 29 ftn. 48 and cases cited therein
 
 
 [19]
 See International Harvester Co. v. Ruckelshaus, 155 U.S.App.D.C. 19, 478 F.2d 615, 629-631, 650-652 (Bazelon, C.J., concurring)
 
 
 [20]
 Friends of the Earth v. United States A.E.C., 158 U.S.App.D.C. 252, 485 F.2d 1031 (1973) (statement of Bazelon, C.J.)
 
 
 [21]
 See Davis, Discretionary Justice at 118
 
 
 [22]
 Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 598 (1971)
 
 
 [23]
 See, e.g., Tr. 307, 308
 
 
 [24]
 See testimony of Dr. Lederer, Tr. 51-78
 
 
 [25]
 See Automotive Parts and Accessories Association v. Boyd, 132 U.S.App.D.C. 200, 407 F.2d 330, 343 (1968)